IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
8-13-2010
AUG 1 3 2010
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| MESUE JACKSON, ) | |
| Plaintiff, ) | |
| ) | |
| V. ) | No. 10 CV 1985 |
| ) | Honorable Judge Blanche M. Manning |
| Loyola University Chicago School of Law ) | |
| ) | Magistrate Judge Keys |
| Defendant, ) | |

### PLAINTIFF'S RESPONSE TO DEFENDANT LOYOLA UNIVERSITY CHICAGO SCHOOL OF LAW'S MOTION TO DISMISS

NOW COMES the Plaintiff, Mesue Jackson, *pro se*, and respectfully asks the Honorable Judge Blanche M. Manning to deny Defendant's Loyola University Chicago School of Law's Motion to Dismiss. I, the Plaintiff, filed this civil case against the Defendant for what I believe was an injustice toward me in trying to gain admissions to Loyola University Chicago School of Law for the 2008 entering class. I believe I have enough evidence to prove that I was a qualified individual for admissions to Loyola University Chicago School of Law, and feel that I was wrongfully denied a reasonable modification for two admissions criteria (work history and low LSAT score) that was affected as a result of extenuating circumstances associated with becoming physically disabled. And, denied admissions and deemed as "unqualified" for admissions based upon the discriminatory acts that I filed in the initial complaint.

As a result of being denied I suffered immensely. I was forced to pursue another educational area that was not my choice, placed in jeopardy of defaulting on student loans and losing the only hope and support I had in trying to better myself as a permanently physically disabled individual. Additionally, trying to pursue the Defendant for what I believe was an

injustice involving discrimination, had caused my physical health to deteriorate as a result of emotional stress from: trying to repeatedly gain admissions, trying to get the proper advice and support from the Defendant to ensure that my request for a reasonable modification was accommodated, being denied more than once in the admissions process, and the steps I had to take to pursue them in filing a civil case against them.

As you can see your Honor, from the Defendant's introduction on their motion to dismiss my case, why I feel that I was discriminated based upon the allegations that I claimed against the Defendant. The Defendant stated (p. 1):

> Plaintiff Mesue Jackson applied for admission to Loyola University....in three consecutive years, and was rejected each time because her application was manifestly uncompetitive....Plaintiff also applied to, and was rejected by, six other law schools in Illinois....Rather than accept that she is not qualified for acceptance to law school, Plaintiff concocted an irrational and implausible story to explain her rejection.

Your Honor, this is exactly the same type of treatment that I received when I applied to the Defendant's law school for three consecutive years. The same way that they are talking to you about me, is the same way that they treated me when I asked for a reasonable modification in the admissions process to overlook the gap in my work history and the low LSAT score due to circumstances surrounding my disability. The Defendant knew that the reasonable modification that I asked for was a type of modification that the Defendant already makes, the reason why they stipulate this type of modification in their application instructions, which states for prospective students to let them know about any extenuating circumstances (such as the LSATscore, or any other area) that may have been impacted or affect by any of the admissions requirements.

Additionally, the reasonable modification that I asked for, would have prevented me, a physically disabled person, that is limited by one or more of life's major activities

(muskoskeletal), from being intentionally excluded as a disabled person (in which I was), from my right to enjoy an opportunity to gain admissions to the Defendant's law school. Furthermore, the Defendant was caught in a lie" to the Office of Civil Rights investigators when they originally told them that the reason they did not apply the reasonable modification, and applied normal admissions standards, are because either (a) they were not aware that I was disabled (which is a lie); (b) that I did not identify myself as being disabled (that is a lie); and (c) my "explanatory" statement made them believe that I did not need a modification, even thought it clearly and directly states, "I am still permanently physically disabled," in the statement. I mean unless someone could not see, it would be very hard to miss a direct statement that directly identifies me as a disabled person.

Anyhow, after I submitted an appeal and additional proof to the OCR investigators, the OCR appeals department stated to me, "you were right," they [Defendant] was aware that you were disabled" (OCR's response after 1st appeal). Now, the Defendant states that I am "uncompetitive," but how can they say this, when they do not know me as an individual. Nor, did they offer me an opportunity (they had 3 opportunities) under the "rolling or scaling basis" program, where the Defendant can pick around 30 students to attend a summer course, and if they do well, they are guaranteed a seat with the entering class that following fall.

Furthermore, Your Honor, as a physically disabled African American woman, I am deeply offended when the Defendant refers to me and my application as being "uncompetitive." To me, this is absolutely nothing and nothing but discrimination. And, I hope the Defendant has a clear definition of how they define competitiveness between disabled and non-disabled prospective students, and provide another physically disabled student's application (if not disabled person, a non-disabled person) that they admitted in 2008 entering class, whose

application clearly shows that they are more competitive than mine. Your honor, I am normally a modest person, but the adverse situations that I endured, I highly doubt the average "non-disabled" person could have endured what I have under the type of adverse situations that I endured. Therefore, how can I be uncompetitive when: I have overcome bedridden status; prior to becoming permanently disabled, I did not have any college degrees but I put myself through school while suffering from adverse situations (physical and financial hardships); trying to better myself while getting constant medical treatment; being in pain; maintaining a high GPA; making it to the doors of law school three times, being an volunteer mentor for my undergrad school to prevent any student from dropping out, and volunteering in my community (helped an Illinois Senator get in office).

Additionally, as a first time college graduate in my family, I have obtained my Associates, Bachelor's Master's Degree, and almost finished with my PhD (Degrees I was forced into while trying to gain entry into Defendant's law school). So, you see your Honor, I did not lay down and decided to accept a small "Social Security Disability" for the rest of my young life. So, I do not see how the Defendant could say or think that I was "uncompetitive," other than for what I clearly believe to be discrimination.

Defendant (2010) stated, "Plaintiff's claims of race and gender discrimination, which are contained in paragraph 11 of the complaint, simply do not link the fact that Plaintiff belongs to protected groups with Loyola's decision to reject her application" (p. 6). In Response to the Defendant's statement, as an African American (race) and African American Women (gender), who is under a protective class , I feel that I was discriminated against by the Defendant because of my race as an African American, and gender discrimination because I am an African American woman who was wrongfully denied admissions due to "bias" admissions standards"

for reasons why I, an otherwise "qualified" African American woman for admissions, was denied admissions, and wrongfully deem as being "uncompetitive" and having "poor characteristics," which are false. I believe that I was discriminated because of my race and gender because of the Defendant' acclaimed diversification strategies to diversify the pool of candidates that they admit to their program. However, I believe that there is an "unfair" and "unequal" percentile of African Americans, and an even shorter percentile of African American women attending the Defendant's law school.

As a result of the small and declining percentile of African Americans and African American women at the Defendant's law school, and as a result of the Defendant's acclaimed diversification actions in the admissions process, I feel that I was a qualified African American woman for admissions, but was wrongfully deemed unqualified as a result of the Defendant trying to, what I believe to be "window dressing" discrimination for African Americans and African American women prospective students from their right to gain admissions to receive a legal education, by wrongfully using "cut off" scores with the LSAT.

Under Appendix 2: LSAC Cautionary Policies Concerning LSAT Scores on the ABA's website, the ABA warns law schools not to use: the LSAT score as a sole criterion for admission, or cut-off scores because it may have a greater adverse impact upon applicant's from minority groups than upon the general applicant population (ABA, p. 2). However, I have a 4.0 GPA and my LSAT score was not taken into consideration with my low LSAT score. Therefore, Your Honor, if you take away the bias admission standards that they used to make me an otherwise qualified African American women, "unqualified" for admissions, you will find that they use my low LSAT score as sole criterion to deny a "qualified" black women admissions; especially, knowing that the already small percentile of African Americans, and especially African

American women could use a "qualified" African American women (such as myself) to help bring up that already small and declining percentile in order to represent an equal and fair diversified pool of candidates, as the Defendant claims.

Additionally, I was not even given an opportunity under the "rolling or scaling basis program, " in efforts to bring up this percentage, which makes me believe that I was discriminated based upon being physically disabled, and based upon being an African American woman. Therefore, I believe, under Title VI of The Civil Rights Act of 1964, 100.3 (a) it holds: No person in the United States shall, on the ground of race, color, or national origin be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination under any program to which this part applies. (b) Specific discriminatory actions prohibited. (1) A recipient under any program to which this part applies may not, directly or through contractual or other arrangements, on the ground of race, color, or national origin (ii) provide any service, financial aid, or other benefit to an individual which is different, or is provided in a different manner, from that provided to others under the program; (iv) restrict an individual in any way in the enjoyment of any advantage or privilege enjoyed by others receiving any service, financial aid, or other benefit under the program; (v) Treat an individual differently from others in determining whether he satisfies any admission, enrollment, quota, eligibility, membership or other requirement or condition which individuals must meet in order to be provided any service, financial aid, or other benefit under the program.

Also, under Title VI of The Civil Rights Act of 1964, 100.3 2(ii) it holds: Even in the absence of such prior discrimination, a recipient in administering a program may take affirmative action to overcome the effects of conditions which resulted in limiting participation by persons of a particular race, color, or national origin.

Your Honor, the Defendant belittled me as an individual in each and every way that they could, and I feel abused as a black person, black women, and disabled person, and feel I was falsely misled into pursuing a legal education that was under false pretense due to the Defendant's false admissions standards that they advertise, the Defendant's diversification claims that I feel "window dress" their claims to admit a diversified pool of candidates to their J.D. program because it wrongfully discriminates against members of underserved communities from their right to gain admissions to their law school, by implementing bias standards that deems otherwise qualified students as being "unqualified" for admissions.

Furthermore, your honor, my initial complaint filed to the Department of Education surrounding my initial allegations that I was discriminated by the Defendant in the admissions process (based upon: disability, race, and gender) became evident when the OCR investigators presented me with direct statements from the Defendant that were biased reasons for denying me admissions, and had nothing to do with admissions standards that were reasonable, nor associated with the admissions standards set forth by the American Bar Association.

Furthermore, if someone fell asleep at the wheel of a motor vehicle, left me bedridden, permanently damaged, and caused me to be unable to continue working at a primary job I have been working at for 8 years, than I should not be penalized from receiving admissions because of the gap in my work history. Additionally, I am permanently physically disabled in accordance to the standards set forth by Section 504 and the ADA. Outside of my request for accommodations in those two aforementioned areas listed above, I was qualified under those two areas despite the Defendant's not providing accommodations in those areas because (1) According to the ABA under Appendix 2. LSAC Cautionary Policies Concerning LSAT Scores (2010), it states:

However, while LSAT scores serve a useful purpose in the admission process,

> They do not measure, nor are they intended to measure, all the elements important to success at individual institutions. LSAT scores must be examined in relation to the total range of information available about a prospective student. It is in this context that the following restraints on LSAT score use are urged: Do Not use the LSAT score as a sole criterion for admission, avoid improper use of cut-off scores, and do not place excessive significance on score differences.

Furthermore, in regards to the LSAT score and the usage of cut-off scores, the ABA states:

> Significantly, cut-off scores may have a greater adverse impact upon applicants from minority groups than upon the general applicant population. Normally, an Applicant's LSAT score should be combined with the undergraduate grade-point Average before any determination is made of the applicant's probability of success in law school.

In accordance with the ABA's statements above, my low LSAT scores it is not a factor that deems me "unqualified" for admissions. Thus, your Honor, despite my request for a reasonable modification surrounding two areas that was associated or impacted by my physical disability, I was still qualified for admissions. And, my requested reasonable modification in the admissions process would have not fundamentally altered the Defendant's admission's program, as they clearly state in the application for admissions, that they can make these alterations. Therefore, I believe my claim under Title II is permissible.

Additionally, Defendant (2010) stated, "Plaintiff fails to allege that Loyola rejected her application because of a disability in violation of Section 504 of the Rehabilitation Act" (Def. Motion to Dismiss, p. 8). In response to that, I am permanently physically disabled (musculoskeletal) as defined under the applicable statute; (2) I am qualified for admissions; (3) I was denied admissions because of being physically disabled; (4) Loyola University Chicago School of Law receives federal financial assistance, as stated in the statements from the October, 8, 2010 facts from the fact findings given by the Office of Civil Rights investigator. 29 U.S.C. § 794(a) (setting out text of § 504); 42 U.S.C. § 12132 (setting out text of Title II of ADA); *see Blazquez v. Bd. of Educ. of City of Chi.*, No. 05-4389, 2007 WL 2410369, at *8 (N.D. Ill. Aug.

20, 2007) (describing elements of § 504 claim); *Herdman v. Univ. of Ill.*, No. 96-8025, 1998 WL 774684, at *6 (N.D. Ill. Oct. 28, 1998). Therefore, the Defendant's statement, "Plaintiff has failed to state a claim for disability discrimination or failure to accommodate" is not true (Def Motion to Dismiss, p. 7). Under Title II of the ADA and Section 504, to the best of my knowledge my claim should not be dismissed.

The Defendant (2010) stated, "…Section 504 does not require and educational institution to lower or substantially modify its admissions standards in order to accommodate a handicapped person" (p. 10). In response to this statement, the request I made for a reasonable modification for two general areas that was impacted by becoming permanently physical disabled, would not have "lowered or substantially" modified the Defendant's admissions standards. As stated before, these types of alterations are made by the Defendant on a regular basis, as it is listed in their application instructions that they do so. Additionally, under Section 504, a disabled person who is qualified under Section 504 can request a "reasonable modification" in which, according to the section under reasonable modifications, it holds:

> Under a regulatory provision implementing Title II of the ADA, public entities are required to make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program or activity.

Furthermore, Your Honor, the request I made was reasonable and in accordance to the standards set forth by Section 504, and the "reasonable modification" that I requested clearly would not have cause a fundamental alteration to the Defendant's admissions program. Thus, the Defendant states that I was denied because I was "manifestly uncompetitive" and "rejected because of poor qualifications." However, the Defendant did not state any reasonable standards, and failed to state what "poor qualifications" supposedly made them believe that my application

was "manifestly uncompetitive?" Therefore, Your Honor, for those reasons I believe that I was discrimination because I am a disabled African American Women. And, I believe I have sufficient evidence to prove that I was "otherwise" qualified for admissions with or without reasonable accommodations, as the ABA states that "many students go into law school with little or no prior work experience," despite the fact that I do have a well established work history prior to becoming permanently physically disabled.

Additionally, the defendant was not asked to alter their program's requirements, as it was already listed in the defendant's application instruction packet for admissions. Furthermore, during the Department of Education's investigation, I learned, in a letter dated October 8, 2008, of the reasons for my denial of admission. I believe those reasons to be discriminatory and form the basis of this complaint. Therefore, the accommodations that I requested as a "modification as a disabled person was "reasonable," and an accommodation the law school could have made, but refused to make due to what I believe to be discrimination.

I voluntarily dismiss my age claim and so will not respond to Defendant's argument regarding that.

If this Court believes that the claims would be clearer were I to amend my complaint, then I ask for leave to do so.

WHEREFORE, for reasons stated above, Plaintiff, MESUE JACKSON, prays that the Honorable Judge will deny Defendant's Motion to dismiss with prejudice the original complaint I filed against the Defendant.

Sincerely,

*Mesue Jackson*

Mesue Jackson

Mesue Jackson, *pro se*
168 Heritage Lane
Streamwood, IL 60107
Phone: 847-893-6565
Email: jacksonmesue@yahoo.com