IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| MESUE JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 10 CV 1985 |
| | ) | |
| v. | ) | The Honorable Judge Manning |
| | ) | |
| Loyola University Chicago School of Law, | ) | Magistrate Judge Keys |
| | ) | |
| Defendant. | ) | |

## LOYOLA UNIVERSITY OF CHICAGO'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS OR STRIKE COMPLAINT

### INTRODUCTION

The Plaintiff's Response to Loyola University of Chicago's ("Loyola") Motion to Dismiss (the "Response") is, in reality, no response at all. Recognizing implicitly that the legal points made in Loyola's Motion are irrefutable, the Response simply amplifies the deficient allegations in the Complaint, and fails entirely to point to any facts that support an inference that Loyola discriminated against the Plaintiff on the basis of protected characteristics. Indeed, the Response reiterates the very points that undermine the Plaintiff's discrimination claims, such as the fact that the Plaintiff's low LSAT score made her application uncompetitive. As explained in Loyola's opening Memorandum of Law, by making these allegations in the Complaint, the Plaintiff has pled herself out of court, mandating dismissal of the Complaint in its entirely, with prejudice.[1] *See Torrence v. Advanced Home Care, Inc.*, No. 08-cv-2821, 2009 WL 144448 at *2 (N.D. Ill. May 21, 2009) (Dow, J.)[2]

---

[1] Loyola accepts the Plaintiff's statement that she is voluntarily dismissing her age discrimination claim and therefore does not address that claim in this Reply.

[2] Copies of unpublished opinions cited in this Reply were attached to Loyola's opening Memorandum of Law.

# ARGUMENT

## I. Plaintiff Has Pled Herself Out of Court By Acknowledging She Did Not Meet Loyola's Admissions Standards

Even a *pro se* plaintiff can plead herself out of court by making factual admissions that undermine the claims she asserts. *Torrence*, 2009 WL 144448 at *2. This is exactly what the Plaintiff has done in this case. The factual allegations made in the Complaint and acknowledged in the Response fatally undermine the Plaintiff's claims by affirmatively stating that she failed to meet Loyola's rigorous standards for admission, and by admitting that Loyola rejected the Plaintiff for this legitimate, non-discriminatory reason. These facts alone are fatal to every one of the Plaintiff's claims because, as a matter of law, an academic institution is not required to lower admissions standards to accept any applicant, regardless of protected characteristics. *See Yates v. John Marshall Law School*, No. 08-c-4127, 2008 WL 4358313 at *6 (N.D. Ill. May 11, 2009) (Aspen, J.) (granting motion to dismiss because "neither the ADA nor the Rehabilitation Act, require JMLS to lower its acceptance standards to accept Yates regardless of her admittedly low LSAT score"); *Halasz v. University of New England*, 816 F. Supp. 37, 43 (D. Me. 1993).

A review of the Complaint's factual allegations shows that they point exclusively to non-discriminatory reasons for the Plaintiff's rejection, plainly contradicting her claims of discrimination. For example, the Plaintiff states that Loyola "denied me admissions [sic] only based on my low LSAT score." (Complaint ¶ 11 (j)). It further alleges that the Plaintiff's application was "not considered competitive" (Complaint ¶ 11 (g)). The Complaint also acknowledges that the Plaintiff had a weak work history (Complaint ¶ 11 (h)) and a "low score" on the Law School Admissions Test (LSAT). (Complaint ¶ 11 (j)). The Complaint also asserts that Loyola accorded more weight to the Plaintiff's low LSAT score than her grade point average. The Complaint goes on to explicitly concede that Loyola "applied normal admissions

standards in reviewing the plaintiff [sic] application." (Complaint ¶ 13 (c)). Finally, the Complaint accuses Loyola of "failing to grant requested accommodations that asked the admissions committee or deciding personnel to wave [sic] or take into consideration certain areas surrounding requirements for admissions, as a result of special circumstances or hardship that was out of the Plaintiff's control, and would potentially cause the Plaintiff to fall short of meeting a couple areas [sic] regarding [Loyola's] admissions requirements." (Complaint ¶¶ 14, 16). Compounding the effect of these admissions, the Plaintiff's Response to Loyola's Motion to Dismiss acknowledges these key facts, further highlighting the irreparable nature of the Complaint's deficiencies.

In an effort to salvage the Complaint, the Response also accuses Loyola of failing to accommodate her claimed disability. However, it is clear that the accommodation she sought was a lowering of Loyola's admission standards. She writes that she "asked for a reasonable modification in the admissions process to overlook the gap in my work history and the low LSAT score due to the circumstances surrounding my disability." (Response at p. 2.) In other words, the Plaintiff seeks to have Loyola lower its standards to admit her despite her admittedly deficient qualifications. However, as noted above, the accommodation the Plaintiff seeks, the lowering of Loyola's admission standards, is one accommodation which she absolutely, as a matter of law, is not entitled to. *See, e.g., Yates*, 2008 WL 4358313, citing *Southeastern Community College v. Davis*, 442 U.S. 397, 413 (1979) ("Section 504 imposes no requirement upon an educational institution to lower or to effect substantial modifications of standards to accommodate a handicapped person").

Read together, the allegations in the Complaint, as amplified in the Response, are irrefutable admissions that the Plaintiff fell short of Loyola's standards and that her claims of

3

discrimination are founded on Loyola's use of "normal admissions standards." Thus, the Plaintiff asks the Court to accept the astonishingly illogical notion that by applying "normal admissions standards," *i.e.*, treating the Plaintiff identically to other applicants, Loyola somehow discriminated against her. In the Plaintiff's upside-down world, treating her fairly as compared to other applicants constitutes unlawful discrimination. Accordingly, like the plaintiff in *Yates*, who asserted that the John Marshall Law School discriminated against her by failing to lower its admission standards to accommodate her low LSAT score, the allegations in the Plaintiff's own Complaint render her claims unsustainable. Thus, because the Complaint and the Response demonstrate that the Plaintiff was objectively unqualified for admission to Loyola, the Court should grant Loyola's Motion to Dismiss.

## II. Plaintiff Has Not Identified Allegations in the Complaint that Would Link Her Rejection to Any of Her Protected Characteristics

The Complaint and the Response also undermine the Plaintiff's discrimination claims because they contain no facts which tie the Plaintiff's protected characteristics to Loyola's decision to reject her. The Complaint merely alleges that the Plaintiff is a member of protected groups and that Loyola rejected her. The Complaint then asks the Court to take the enormous leap of faith required to conclude that her rejection was motivated by her protected characteristics. However, the case law and common sense preclude the Court from making this leap. *See Deberry v. Davis*, No. 1:08-cv-582, 2010 WL 1610430 at *6 (M.D.N.C. April 19, 2010) (Auld, J.) (unsuccessful plaintiff failed to state a claim for race discrimination because he failed to allege a link between his race and his rejection from law school). In short, as was the case in *Deberry*, neither the Complaint nor the Response point to anything that would give rise to an inference that Loyola discriminated against the Plaintiff.

4

In the Response, the Plaintiff attempts to save her discrimination claims with incoherent references to vague and undefined terms such as Loyola's alleged "bias [sic] admissions standards"[sic] (Response at p. 5.) and "window dressing discrimination." (*Id.*) She claims that Loyola's alleged "small and declining percentile of African Americans and African American women" combined with what she refers to as Loyola's "acclaimed diversification actions in the admissions process," is somehow evidence that Loyola discriminated against her because of her race and gender. (*Id.*) Even if one forgives the incoherence of these points, they do not constitute facts that show Loyola's decision to reject the Plaintiff's application was motivated by discrimination.

Later in the Response, in a departure from the Complaint's allegations, the Plaintiff seeks to base her discrimination claim on a belief that Loyola used "cut off" LSAT scores, despite a warning not to do so which she says is contained in the Law School Admissions Council ("LSAC") Cautionary Policies Concerning LSAT Scores. Although the Plaintiff does not explain the term, presumably "cutoff score" refers to rejecting applicants who do not have certain minimum LSAT scores. But Loyola's use of LSAC guidelines is irrelevant to the Plaintiff's discrimination claims. Indeed, whether or not Loyola followed such guidelines has no bearing on the question of whether Loyola discriminated against the Plaintiff. Thus, the Court should disregard the Plaintiff's reference to LSAC guidelines.

## CONCLUSION

The Complaint in this case is fatally defective -- and remains so even after the Plaintiff's Response -- because it alleges that the Plaintiff was objectively unqualified for admission to Loyola's School of Law, that Loyola rejected the Plaintiff's application for legitimate reasons and because it fails to allege any facts which connect Loyola's rejection of the Plaintiff's application to her protected characteristics. The allegations in the Complaint show that Loyola

5

received Plaintiff's law school application, determined that it was not up to Loyola's standards, and denied her admission by applying its "normal admissions standards." Thus, the Response changes nothing, and the points made in Loyola's opening Memorandum of Law remain entirely unrefuted.

Moreover, the implausible allegations of the Complaint and the preposterously unrealistic prayer for relief ("admit the plaintiff to the JD program with a full ride scholarship, at no cost to the plaintiff") demonstrate a more troubling aspect to this case. Clearly, the Plaintiff is using this litigation as a means to engage in economic harassment of Loyola and the six other law schools she has sued. This is precisely what Rule 11 was intended to prevent. *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 830 (9th Cir. 1986) (the two major problems Rule 11 aims to resolve are "frivolous filings" and "misusing judicial procedures as a weapon for personal or economic harassment"). In light of the cases cited above and the principle that federal courts traditionally defer to academic institutions in admission decisions (*Board of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 92 (1978)), Loyola requests that the Court dismiss the Complaint with prejudice, and deny the Plaintiff leave to amend.

Date: August 26, 2010                                    Respectfully submitted,

                                                         **LOYOLA UNIVERSITY**

                                                         /s/ *Jacob M. Rubinstein*
                                                         One of Its Attorneys

Jacob M. Rubinstein
Jenny R. Goltz
Meckler Bulger Tilson Marick & Pearson LLP
123 N. Wacker Drive, Suite 1800
Chicago, Illinois 60606
Tel:    312.474.7900
Jake.rubinstein@mbtlaw.com
Jenny.goltz@mbtlaw.com
M:\14255\pleading\Loyola Reply ISO Mot to Dismiss Final.doc